2022 IL App (1st) 210984
No. 1-21-0984

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| NANCY CLANTON, as Independent Administrator of the Estate of Laurel J. Jansen, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 2020 L 006460 |
| OAKBROOK HEALTHCARE CENTRE, LTD., an Illinois Corporation, d/b/a Oak Brook Care; LANCASTER, LTD., an Illinois Corporation; and MAY FLOR ANDORA, | ) ) ) ) ) | Honorable Patricia O. Sheahan, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice Hyman and Justice Walker concurred in the judgment and opinion.

**OPINION**

¶ 1      Plaintiff Nancy Clanton, as administrator for the estate of decedent Laurel Jansen, filed an

eight-count complaint against defendants Oakbrook Healthcare Centre, Ltd., d/b/a Oak Brook

Care (Oakbrook); Lancaster, Ltd. (Lancaster), and May Flor Andora, RN, alleging defendants'

negligence while decedent was a resident of a skilled nursing facility. Defendants subsequently

moved to compel mediation or arbitration with respect to the counts against Oakbrook and

Andora, premised on the Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2018)) (count I) and the Survival Act (755 ILCS 5/27-6 (West 2018)) (counts II, VI, and VIII). Defendants relied on the arbitration provision of the "Contract Between Resident and Facility," executed by Debbie Kotalik, a daughter of decedent who purportedly was the holder of decedent's healthcare power of attorney. Defendants moved to stay the remaining counts of the complaint, which consisted of counts under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.*(West 2018)) against Oakbrook and Andora (counts III and VII), as well as the counts against the remaining defendant, Lancaster, under the Survival Act and Wrongful Death Act (counts IV and V). The circuit court denied defendants' motion in its entirety, finding that the contract provision regarding arbitration was substantively unconscionable.

¶ 2 On appeal, defendants argue that the trial court erred in finding the contract was unconscionable and that even if a portion of the contract was unenforceable, it was severable from the arbitration agreement. Plaintiff argues that defendants waived the ability to rely on the contract, the circuit court correctly found the arbitration provision was substantively unconscionable, and that the arbitration provision is otherwise unenforceable on a number of other grounds. Among these, plaintiff contends for the first time on appeal that since the contract stated that it terminated "immediately upon the resident's death," the arbitration agreement therein also terminated and was ineffective after decedent's death.

¶ 3 For the following reasons, we conclude that although defendants' litigation conduct did not waive its right to invoke the arbitration provision, the agreement was no longer enforceable, given the contract's explicit language that it terminated upon decedent's death. For that reason, we affirm the trial court's denial of defendants' motion to compel arbitration with respect to the Nursing Home Care Act count against Oakbrook (count I) as well as the negligence-based

Survival Act counts against Oakbrook and Andora (counts II, VI and VIII). As defendants have no right to compel arbitration, we also affirm the denial of their request to stay the Wrongful Death Act counts against Oakbrook and Andora (counts III and VII) pending arbitration. As defendants raise no argument regarding the trial court's denial of defendants' separate request to stay the two remaining counts against Lancaster (counts IV and V), we also affirm that portion of the trial court's order.

¶ 4                                     I. BACKGROUND

¶ 5        Plaintiff Clanton is decedent's daughter. The underlying lawsuit arises out of decedent's stay at a skilled nursing facility allegedly owned and operated by defendants Oakbrook and Lancaster. Defendant Andora was allegedly employed as a nurse at the facility and was allegedly "in charge of" decedent's care and treatment.

¶ 6        According to plaintiff's complaint, decedent, who was born in 1931, resided at the facility from "approximately July 19, 2019 through September 17, 2019 exclusive of intermittent hospitalizations." Decedent allegedly had a number of unwitnessed falls in August 2019, after which her condition deteriorated, and she was hospitalized. Decedent died on September 30, 2019.

¶ 7        Plaintiff filed the complaint on June 16, 2020. Plaintiff pleaded four counts against Oakbrook. Count I pleaded a violation of the Nursing Home Care Act (210 ILCS 45/1-101 (West 2018)). Count II asserted a negligence claim under the Survival Act, under which "actions to recover damages for an injury to the person" survive that person's death. 755 ILCS 5/27-6 (West 2018)). Count III asserted a negligence claim under the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 2018). Count VIII asserted a "res ipsa loquitur" negligence claim against Oakbrook, which also specified that it was brought under the Survival Act. In addition

to these four counts against Oakbrook, the complaint also included Survival Act and Wrongful Death counts against both Lancaster (counts IV and V) and Andora (counts VI and VII).

¶ 8     Defendants' counsel filed an appearance on September 24, 2020, and moved for extension of time to answer.[1] Plaintiff served discovery requests, including requests for documents, on October 13, 2020. On October 15, 2020, the court entered a Case Management Order that required Rule 213 interrogatories and Rule 214 document requests to be issued by December 16, 2020, and for such discovery to be completed by April 16, 2021.

¶ 9     Defendants filed their answer and affirmative defenses on November 17, 2020. Defendants subsequently issued interrogatories and document requests to plaintiff. The record reflects that on May 10, 2021, Oakbrook served its answers to plaintiff's interrogatories and produced documents.

¶ 10    On May 20, 2021, defendants' counsel produced additional documents to plaintiff's counsel, including the "Contract Between Resident and Facility" (the contract), whose provisions are at issue in this appeal. Defense counsel provided a letter with the production stating that the contract was provided to defense counsel by Oakbrook two days earlier. However, defense counsel did not include an affidavit from any Oakbrook manager or representative, explaining how the contract was found or why it was not located earlier. Defense counsel's letter informed plaintiff's counsel that the contract contained an "arbitration agreement" and that defendants planned to "file a motion to enforce the arbitration agreement."

---

[1]The same law firm represented Oakbrook, Lancaster, and Andora in the circuit court and represents all three defendants in this appeal.

¶ 11                                A. The Contract

¶ 12          The contract reflects that it was entered into by the decedent as "Resident" and Oak Brook

Healthcare & Rehabilitation Centre, Ltd. as the "Facility." The signature block for the contract

reflects that it was signed by Paula Park, as "Facility Representative" on August 9, 2019. The

contract was signed on behalf of decedent by "Debbie Kotalik (POA)." According to plaintiff's

submissions, in 2009 decedent executed a statutory short form healthcare power of attorney

(POA) appointing Kotalik.[2]

¶ 13          The terms of the contract are set forth in a number of sections. Of particular relevance to

this appeal, section "E" of the contract states as follows:

          "E. Dispute Resolution/Punitive Damages

          1. Civil Disputes Subject To This Paragraph. Resident and Facility agree that all civil

          claims arising in any way out of this Agreement, other than claims by Facility to collect

          unpaid bills for services rendered, or to involuntarily discharge Resident, shall be resolved

          exclusively through mandatory mediation, and, if such mediation does not resolve the

          dispute, through binding arbitration using the commercial mediation and arbitration rules

          and procedures of JAMS/Endispute in its Chicago, Illinois office.

          2. Punitive/Treble Damages Waived. Resident and Facility also agree that both

          Resident and Facility shall seek only actual damages in any such mediation or arbitration,

          and that neither of them will pursue any claim for punitive damages, treble damages or any

_____

[2]In the trial court, plaintiff submitted a copy of the healthcare POA in response to defendants' motion to compel arbitration, but defendants did not submit any affidavit from Kotalik attesting that the healthcare POA was authentic or that she had executed the contract as the holder of decedent's healthcare POA. In any event, the authenticity of the healthcare POA need not be resolved to decide this appeal.

other type of damages the purpose of which are to punish one party in an amount greater than the actual damages caused by the other party."

Section "F" of the contract sets forth circumstances that terminate the contract. Among these, it specifies that "If the resident is compelled by a change in physical or mental health to leave the facility, this Contract shall terminate on 7 days' notice or immediately upon the resident's death."

¶ 14                                    B. Defendants' Motion

¶ 15        On May 28, 2021 (eight days after the contract was produced), defendants filed a "Motion to Compel Mediation and/or Arbitration And Dismiss with Prejudice Counts I, II, VI, and VIII and to Stay Prosecution of Plaintiff's Wrongful Death Claims." Defendants argued that the contract required mediation or arbitration of the complaint's counts against Oakbrook and Andora, with the exception of the Wrongful Death Act claims. Defendants acknowledged that, pursuant to our supreme court's decision in *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, the contract's arbitration provision did not apply to Wrongful Death Act claims, as such claims are brought on behalf of the decedent's relatives and not for the benefit of the decedent's estate. Defendants argued that the Wrongful Death Act counts against Oakbrook and Andora should be stayed pending mediation or arbitration of the other claims.

¶ 16        Defendants' motion separately sought to stay the two counts against Lancaster (counts IV and V), maintaining that discovery would show that Lancaster "did not own, operate, or manage" the facility. Defendants averred that once "appropriate discovery" had been completed, Lancaster "intends to address such non-involvement and seek dismissal of Counts IV and V." Defendants further argued that since Lancaster's "non-involvement may be

addressed at mediation and/or arbitration" a stay of the counts against Lancaster would promote judicial economy.

¶ 17    The motion thus included two separate stay requests with respect to different defendants and on different grounds. First, defendants requested a stay of the Wrongful Death Act counts against Oakbrook and Andora (counts III and VII) on the basis that the other claims against those two parties should be mediated or arbitrated. Second, defendants separately requested a stay of both counts asserted against Lancaster (counts IV and V) on the basis that Lancaster had no involvement in the factual allegations underlying the complaint.

¶ 18    Elsewhere in the motion, defendants argued they had not waived their right to invoke the arbitration provision of the contract, since they had "not submitted any arbitrable issue to the Court for decision." They asserted that the delay in filing the motion was not due to any lack of diligence, but was due to the recent production of the contract by Oakbrook to defense counsel.

¶ 19    In support of the motion to compel arbitration, defendants submitted the affidavit of Jina Lebert-Davies, an administrator of the facility. She averred that, when she learned of plaintiff's lawsuit in August 2020, "the facility was in the midst of responding to the COVID crisis and my attention was focused on keeping the facility's residents and employees safe and responding to the pandemic." She stated that the contract was "inadvertently omitted from the documents originally provided to counsel" but was provided to counsel on May 17, 2021 "immediately" after she located it.

¶ 20    Plaintiff's response opposed the motion on several grounds. First, plaintiff urged that defendants had waived their right to arbitrate because they had "extensively participated" in the litigation for nearly one year. Plaintiff noted that defendants had answered the complaint,

"filed multiple sets of discovery," and issued subpoenas. Plaintiff claimed that defendants "waited until after the Plaintiff had answered all written discovery to try to enforce the arbitration contract."

¶ 21 Second, plaintiff argued that Kotalik lacked authority to execute an arbitration agreement on decedent's behalf. Plaintiff asserted that decedent executed a POA for health care, appointing Kotalik, but that decedent separately appointed Clanton (plaintiff herein) as POA for property. As exhibits, plaintiff attached a copy of an "Illinois Statutory Short Form Power of Attorney for Health Care" appointing Kotalik and a copy of an Illinois Statutory Short Form Power of Attorney for Property" appointing Clanton, which reflected that the documents were both executed in January 2009. Plaintiff argued that the separate POAs indicated that decedent wished to divide responsibilities between her daughters, and that Kotalik's authority to make healthcare decisions did not include "authority to bind [decedent] to an arbitration agreement."

¶ 22 Plaintiff separately urged that the arbitration provision was procedurally unconscionable because Kotalik lacked bargaining power and "had no opportunity to participate in the agreement's drafting." Plaintiff also contended that the arbitration provision was substantively unconscionable because it sought to deprive residents of their statutory right to recover attorney fees for violations of the Nursing Home Care Act. See 210 ILCS 45/3-602 (West 2020).

¶ 23 In their reply, defendants maintained that they had not taken any actions inconsistent with an intent to arbitrate, that they had promptly produced the contract once it was discovered, and that they otherwise acted in good faith in responding to plaintiff's discovery requests. Defendants otherwise argued that Kotalik had authority to execute the contract and that Kotalik was given the opportunity to ask questions about the contract before signing it. Defendants disputed that the arbitration provision sought to extinguish plaintiff's ability to recover attorney

fees and costs under the Nursing Home Care Act. On this point, defendants noted that JAMS rules permit an arbitrator to "grant any remedy or relief allowed by the Parties' Agreement or law" and that an award "may allocate attorneys' fees and expenses *** if provided by the Parties' Agreement or allowed by applicable law."

¶ 24                    C. The Trial Court Denies Defendants' Motion

¶ 25        On July 14, 2021, the trial court issued an order denying defendant's motion. In explaining its reasoning, the court first rejected plaintiff's contention that defendants waived the ability to seek arbitration or mediation. The court acknowledged that defendants had answered the complaint, served interrogatories, and responded to written discovery, yet it found those actions were not "inconsistent with defendants' right to rely on the mediation and/or arbitration clause." The court also noted that it was "sympathetic to the impact the Covid-19 pandemic had on nursing home facilities." The court emphasized that, only two days after receiving the contract, defense counsel produced it and notified plaintiff of their intent to file the motion to compel arbitration.

¶ 26        The court also rejected the plaintiff's argument that the arbitration provision was procedurally unconscionable. The court noted that the relevant language was "in the same font and size of the other clauses of the contract" and that its language was "clear and unambiguous."

¶ 27        The court also found that Kotalik had the "opportunity to ask questions before signing the contract."

¶ 28        The trial court nonetheless held that the arbitration provision was "unenforceable as substantively unconscionable." Citing the Fifth District's decision in *Glass v. Burkett*, 64 Ill. App. 3d 676, 683 (1978), the trial court found that "[b]y limiting plaintiff's ability to recover

punitive damages, the provision effectively limits plaintiff's ability to recover attorney's fees." The court found the arbitration provision was "an attempt to nullify the primary reason for the attorneys' fees provision of the Illinois Nursing Home Care Act," *i.e.*, to "give residents incentive to bring claims to police nursing homes." The court thus found the arbitration clause substantively unconscionable because it attempted to extinguish the statutory right to attorney fees.

¶ 29 The trial court proceeded to state that, "in its discretion," it declined to sever the limitation on damages from the rest of the arbitration agreement. That is, the court held that "the offending provision renders the entirety of the mediation and/or arbitration clause unenforceable." The court thus denied the motion to compel mediation or arbitration of any of counts I, II, VI, or VIII. The court also denied as moot the defendants' request to stay any of the remaining counts.

¶ 30 On August 13, 2021, defendants filed a notice of interlocutory appeal from the denial of the motion.

¶ 31 II. ANALYSIS

¶ 32 On appeal, defendants raise two lines of argument to challenge the court's denial of their motion to compel arbitration. First, they contend that the trial court erred in concluding that the contract's language on punitive damages was substantively unconscionable as a bar against the recovery of attorney fees pursuant to the Nursing Home Care Act. That is, defendants claim that the language regarding "punitive damages" did *not* affect the statutory right to recover attorney fees, as they are distinct from punitive damages.

¶ 33 Defendants alternatively argue that, even assuming the limitation on damages was substantively unconscionable, the trial court erred in finding that it rendered the entire

arbitration provision unenforceable. That is, they argue that the court should have severed the purportedly offending limitation on damages but otherwise enforced the language compelling mediation or arbitration.

¶ 34    In response, plaintiff suggests a number of grounds upon which we should affirm the denial of the defendants' motion, including grounds not discussed in the trial court's order. First, plaintiff maintains the trial court correctly found the contract's language on punitive damages was substantively unconscionable because it limited the right to recover statutory attorney fees.

¶ 35    Plaintiff otherwise argues that defendants' participation in the litigation waived their right to rely on the arbitration provision. Plaintiff further contends that, apart from the damages limitation, the arbitration provision is otherwise substantively unconscionable because it is "one-sided" as to which claims are subject to arbitration. Plaintiff independently argues that we may affirm because (1) the arbitration clause was procedurally unconscionable, (2) Kotalik lacked authority to enter into the arbitration agreement, or (3) the arbitration agreement was unenforceable because the entire contract terminated upon the decedent's death.

¶ 36    For the following reasons, we agree with defendants that their participation in litigation did not waive their right to move to compel the arbitration. However, we conclude that the arbitration provision was unenforceable, albeit for a different reason than that relied on by the trial court. Specifically, the contract unequivocally provided that it would terminate "immediately upon the resident's death." In turn, the entire contract, including the arbitration agreement, was no longer enforceable by the time this action was commenced. For that reason, we will affirm the denial of defendants' request to compel arbitration with respect to counts I, II, VI, and VIII against Oakbrook and Andora, as well as the denial of the request to stay the Wrongful Death Act counts against those defendants (counts III and VII). Finally, as

defendants do not raise any argument with respect to the trial court's denial of the request to stay the counts against Lancaster (counts IV and V), we affirm that portion of the order.

¶ 37                           A. Appellate Jurisdiction

¶ 38        We note that we have jurisdiction pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), which permits a party to appeal from an interlocutory order of the circuit court "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." "An injunction is a judicial process requiring a party to do a particular thing or refrain from doing a particular thing." *Herns v. Symphony Jackson Square LLC*, 2021 IL App (1st) 201064, ¶ 14 (citing *In re A Minor*, 127 Ill. 2d 247, 261 (1989)). "An order granting or denying a motion to compel arbitration is injunctive in nature and is appealable under Rule 307(a)(1)." *Id.*

¶ 39                           B. Standard of Review

¶ 40        "A motion to compel arbitration is essentially a section 2-619(a)(9) motion to dismiss or stay an action in the trial court based on an affirmative matter, the exclusive remedy of arbitration. [Citation.]" *Sturgill v. Santander Consumer USA, Inc.*, 2016 IL App (5th) 140380, ¶ 21. "Section 2-619(a)(9) allows for a dismissal where the claim is barred by an affirmative matter that avoids the legal effect of or defeats the claim. (735 ILCS 5/2-619(a)(9) (West 2010))." *Id.*

¶ 41        "In an appeal from the denial of a motion to compel arbitration without an evidentiary hearing, our review is *de novo*." *Id.* ¶ 20 (citing *Hollingshead v. A.G. Edwards & Sons, Inc.*, 396 Ill. App. 3d 1095, 1099 (2009)). This is consistent with the principle that issues of contractual interpretation, including with respect to arbitration provisions, are reviewed *de novo. Fiala v. Bickford Senior Living Group, LLC*, 2015 IL App (2d) 141160, ¶ 17 ("We review *de novo* the trial court's decision on a motion to dismiss pursuant to section 2-619.

[Citation.] Likewise, the scope of [an] arbitration provision presents a question of contract interpretation, and this is also reviewed *de novo*."); *Coe v. BDO Seidman, L.L.P.*, 2015 IL App (1st) 142215, ¶ 12 ("An agreement to arbitrate is a matter of contract, and the interpretation of a contract is a question of law subject to *de novo* review."). Thus, *de novo* review applies, to the extent the trial court's conclusions involved issues of contract interpretation rather than findings of fact.

¶ 42     A different standard applies with respect to the trial court's determination as to whether defendants waived their contractual right to arbitrate. "A number of decisions from the First District of this court have determined an abuse of discretion standard applies to a review of the circuit court's decision regarding waiver of arbitration rights. [Citation.]" *Bovay v. Sears, Roebuck & Co.*, 2013 IL App (1st) 120789, ¶ 24; see also *Woods v. Patterson Law Firm, P.C.*, 381 Ill. App. 3d 989 (2008) (applying abuse of discretion review to whether defendants waived right to compel arbitration); *Glazer's Distributors of Illinois, Inc. v. NWS-Illinois, LLC*, 376 Ill. App. 3d 411, 423-24 (2007) (following First District precedent applying abuse of discretion standard). Application of deferential review stems from recognition that the circuit court must " 'engage in a factual inquiry to determine if a party's actions constitute waiver.' " *Glazer's*, 376 Ill. App. 3d at 423 (quoting *Schroeder Murchie Laya Associates, Ltd. v. 1000 West Lofts, LLC*, 319 Ill. App. 3d 1089, 1093 (2001)).

¶ 43     In sum, "in interlocutory appeals of orders denying a motion to compel arbitration, questions of law are reviewed *de novo*, while any findings of fact are reviewed for an abuse of discretion in light of a proper understanding of the law." *Bovay*, 2013 IL App (1st) 120879, ¶ 26. "An abuse of discretion occurs only when the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view. [Citations.]" *Id.*

¶ 44                    C. Whether Defendants Waived the Right to Rely on the Arbitration Provision

¶ 45            Before addressing the parties' arguments regarding the content of the contract, we first address plaintiff's contention that defendants waived the right to invoke the arbitration clause because they did not move to compel arbitration until approximately 11 months after plaintiff's complaint was filed. Plaintiff points out that defendants' answer and affirmative defenses filed on November 2020 did not reference arbitration, and that in the ensuing months defendants issued subpoenas and served discovery requests. Plaintiff maintains that such actions were inconsistent with a right to arbitrate and indicated defendants' abandonment of any such contractual right.

¶ 46            "While arbitration is a favored method of settling disputes in Illinois, a party may waive its contractual right to arbitration. [Citation.]" *TSP-Hope, Inc. v. Home Innovators of Illinois, LLC*, 382 Ill. App. 3d 1171, 1174 (2008). However, "Illinois courts are reluctant to find a party waived its contractual right to arbitration. [Citation.]" *Id.*

¶ 47            "Although disfavored, waiver will be found where 'a party conducts itself in a manner inconsistent with the arbitration clause, thereby demonstrating an abandonment of that right.' " *Koehler v. The Packer Group, Inc.*, 2016 IL App (1st) 142767, ¶ 22 (quoting *Northeast Illinois Regional Commuter R.R. Corp. v. Chicago Union Co.*, 358 Ill. App. 3d 985, 996 (2005)). In deciding whether there was waiver, the " 'crucial inquiry' " is " 'whether the party has acted inconsistently with its right to arbitrate.' " *Id.* (quoting *Glazer's*, 376 Ill. App. 3d at 42). "A party acts inconsistently with its right to arbitrate when it submits arbitrable issues to a court for decision. [Citation.]" *TSP-Hope, Inc.*, 382 Ill. App. 3d at 1174. "[T]he operative distinction between judicial filings and actions that constitute a waiver of the right to compel arbitration and those that do not is whether, prior to seeking to compel arbitration, the party has placed

substantive issues before the court." *Watkins v. Mellen*, 2016 IL App (3d) 140570, ¶ 15. First District precedent does not explicitly require prejudice to the other party to find waiver, although it may be considered. See *Woods*, 381 Ill. App. 3d at 994 ("Illinois courts also consider the delay in a party's assertion of its right to arbitrate and any prejudice the delay caused the plaintiff. [Citation.]")[3]

¶ 48        Keeping in mind that the trial court's determination is reviewed for an abuse of discretion (*Glazer's*, 376 Ill. App. 3d at 424) here, we cannot say that the trial court abused its discretion in determining that defendants did not waive their right to rely on the arbitration provision. Although defendants answered the complaint and conducted some discovery, they did not "submit[ ] arbitrable issues to a court for decision. [Citation.]" *TSP-Hope, Inc.*, 382 Ill. App. 3d at 1223. Before filing the motion to compel arbitration, defendants did not ask the court to rule on any substantive issue. *Cf. Midland Funding LLC v. Hilliker*, 2016 IL App (5th) 160038, ¶ 29 (finding waiver where party "repeatedly sought a substantive judicial determination of a disputed issue and a judicial termination of the litigation"). Defendants' actions were clearly responsive to the complaint and in compliance with the trial court's case management order. It was not unreasonable for the trial court to conclude that such actions were not inconsistent with defendants' reliance on the arbitration provision. Moreover, as the trial court noted, the record reflects that defendants promptly asserted their right to arbitrate after the discovery of the contract. The trial court apparently found that defendants had not abandoned the right to arbitrate but diligently pursued it once the contract was discovered.

---

[3]We note that the United States Supreme Court recently held that federal courts cannot condition a waiver of the right to arbitrate on a showing of prejudice, as the Federal Arbitration Act (9 U.S.C. § 3 (2018)) does not authorize federal courts to create an arbitration-specific procedural rule. *Morgan v. Sundance, Inc.*, ___ U.S. ___, 142 S. Ct. 1708 (2022).

¶ 49    We note plaintiff's claims that she suffered prejudice because (1) plaintiff answered interrogatories, which are not contemplated by JAMS rules, and (2) defendants' delay prevented a "speedy resolution" of the dispute. Plaintiff's prejudice arguments do not convince us that the trial court was unreasonable in deciding that defendants' conduct did not amount to waiver. We note that plaintiff does not articulate how she was prejudiced by responding to the interrogatories. Moreover, the interrogatories and plaintiff's responses are not in the record on appeal, which limits our ability to evaluate the claim of prejudice.

¶ 50    We are also not convinced that the delay resulting from defendants' motion, filed 11 months after the complaint, is so prejudicial that it was unreasonable for the trial court not to find waiver. Our precedent indicates that the relevant inquiry is not simply the length of prior litigation or the number of prior filings by the party seeking arbitration, but whether that party put substantive issues before the trial court. See, *e.g.*, *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 1192 (2000) (defendants' two-year delay in seeking arbitration did not establish waiver where they "did not submit any substantive questions to the trial court for determination").

¶ 51    In this case, the record reflects that defendants did not ask the court to make any determination on the merits before moving to compel arbitration. Further, their submissions reflect that the delay in filing the motion was due to Oakbrook's inadvertent failure to discover the contract earlier. Once it was discovered, defendants promptly produced the contract and filed their motion. On this record, the trial court could reasonably find that defendants' actions were not inconsistent with asserting a right to arbitration. We thus decline to find that the trial court erred in finding defendants had not waived their right to seek arbitration. Nevertheless,

as explained below, we proceed to conclude that the arbitration provision was ineffective after decedent's death, by operation of the contract's termination provision.

¶ 52                    D. The Contract Expressly Terminated Upon Decedent's Death, Rendering

the Arbitration Provision Unenforceable

¶ 53    Although plaintiff asserts a number of arguments for why we should find the arbitration provision unenforceable, we only need discuss one of them to resolve this appeal. Specifically, we agree with plaintiff that section F of the contract—which provides that the contract shall terminate "immediately upon the resident's death"—is dispositive. That is, the entire contract, including the arbitration agreement, terminated upon decedent's death.

¶ 54    Plaintiff did not raise this argument in the trial court, yet that does not preclude us from considering it.

"While an appellant who fails to raise an issue in the trial court waives that issue, an appellee may raise an issue on review that was not presented to the trial court in order to sustain the judgment, as long as the factual basis for the issue was before the trial court. [Citation.]" *DOD Technologies v. Mesirow Insurance Services, Inc.*, 381 Ill. App. 3d 1042, 1050 (2008).

Further, "[w]e can affirm the trial court on any basis that appears in the record, regardless of whether the trial court relied upon such ground." (Internal quotation marks omitted.) *Cooney v. Magnabosco*, 407 Ill. App. 3d 264, 268 (2011). We will thus consider the merits of this argument.

¶ 55    Plaintiff acknowledges that "the general rule is that a contract survives the death of a party," subject to certain exceptions, such as contracts requiring performance from a particular person. Plaintiff does not argue that the instant contract is a personal performance contract but asserts

- 17 -

that "the contract did not survive [decedent's] death because the parties agreed it terminated upon her death." That is, defendants have "nothing to enforce because the arbitration clause ceased to exist" upon decedent's death.

¶ 56    In response, defendants assert that plaintiff's interpretation violates the principle that "all parts of a contract should be constructed harmoniously" to avoid conflicting provisions, and that there was "no intention for the entire contract to terminate" upon a resident's death. According to defendant, the proper application of the termination provision is that "Oakbrook no longer has to provide services to [decedent], however, lawsuits arising from the care [decedent] received while at Oakbrook remain enforceable under the Oakbrook Contract." We find that defendants' position is undermined by the unambiguous and unequivocal language of the termination provision.

¶ 57    As both parties acknowledge, "[t]he general rule is that a contract survives the death of a party [citation] except *** when the contract requires the continued existence of a particular person or thing for its performance." *In re Estate of Bajonksi*, 129 Ill. App. 3d 361, 366-67 (1984). Regardless of the general rule, we must consider the effect of the clause that the contract shall terminate "immediately upon the resident's death," including whether it renders the arbitration provisions unenforceable after a resident's death. We apply these well-settled principles of contract interpretation:

    "In construing a contract, the primary objective is to give effect to the intention of the parties. [Citation.] The court will first look to the language of the contract itself to determine the parties' intent, and the contract must be construed as a whole, viewing each provision in light of the other provisions. [Citation.] The parties' intent is not determined by viewing a clause or provision in isolation, or in looking at detached portions of the

contract. [Citation.] If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning. [Citation.] A court will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used." (Internal quotation marks omitted.) *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 38.

¶ 58    In this case, Section F. 1 stated "this Contract shall terminate on 7 days' notice or immediately upon the resident's death." We find (and defendants do not dispute) that this language is clear and unambiguous. Thus, we must apply the provision's plain meaning. That is, the entire contract terminated upon decedent's death in 2019. In turn, we agree with plaintiff that there was no longer any enforceable arbitration agreement when the instant action commenced.

¶ 59    Defendants argue "it is clear that there is no intention for the entire contract to terminate upon death of a resident," yet that is precisely what the plain language of the termination provision reflects. "The best indication of the parties' intent is found in the plain and ordinary meaning of the language of the contract." *St. Paul Mercury Insurance v. Aargus Security Systems, Inc.*, 2013 IL App (1st) 120784, ¶ 59. The termination provision states, without limitation, that "This Contract" terminates upon a resident's death. Thus, it indicates that the resident's death applies to terminate all contractual provisions.

¶ 60    By urging that we should not read the termination provision so broadly, defendants essentially ask us to assume or read into the agreement limitations or exceptions that are simply not present. However, "[w]e will not 'alter, change, or modify existing terms of a contract, or

add new terms or conditions to which the parties do not appear to have assented.' " *Id.* (quoting *Thompson v. Gordon*, 241 Ill. 2d 428, 449 (2011)).

¶ 61    Moreover, " 'there is a presumption against provisions that easily could have been included in a contract but were not.' " *Id.* (quoting *Thompson*, 241 Ill. 2d at 449). Here, the drafters of the contract could quite easily have used other language to indicate the more limited interpretation of the termination provision that defendants now seek. Rather than broadly stating that "this Contract" (*i.e.*, the whole contract) would terminate upon the resident's death, the drafters could have specified which provisions would remain in effect. For instance, the contract could have stated that the death of a resident extinguished obligations for future performance of services, but did not extinguish the parties' agreement to arbitrate claims that accrued during a resident's lifetime. Or the termination provision could have simply included a carve-out to preserve the arbitration provision, for example, by stating that "this Contract, *other than the arbitration agreement in Section E*, shall terminate" upon the resident's death. While we cannot know why the drafters inserted such a broad termination provision, defendants cannot avoid the effect of the plain meaning of its language.

¶ 62    We also note defendants' reliance on the proposition that we should attempt to harmonize contractual provisions. See *Wolfensberger v. Eastwood*, 382 Ill. App. 3d 924, 934 (2008) ("When possible, courts should construe a contract so that different provisions are harmonized, not conflicting with one another. [Citation.]"); *Zannis v. Lake Shore Radiologists, Ltd.*, 73 Ill. App. 3d 901, 906 (1979) (citing the "well-established principle in the law of contracts that a construction should be adopted 'which harmonizes all the various parts so that no provision is deemed conflicting with, or repugnant to, or neutralizing of any other' " (quoting *Coney v. Rockford Life Insurance Co.*, 67 Ill. App. 2d 395, 399 (1966)). Contrary to defendants'

suggestion, our conclusion does not violate this principle. We are not neutralizing the arbitration provision, which remains in effect prior to termination. That is, our construction gives effect to both the arbitration and termination provisions. Read together, the provisions indicate that, while the parties may be obligated to arbitrate claims during a resident's lifetime, the arbitration agreement (like every other part of the contract) terminates upon the resident's death. Our application of the broad termination provision does not conflict with the arbitration provision, any more than a termination provision affects every other provision in the agreement. We are simply giving effect to the contract's unequivocal language that all of its provisions terminate upon the resident's death.

¶ 63 We recognize that our conclusion conflicts with *Mason v. St. Vincent's Home, Inc.*, 2022 IL App (4th) 210458, which appears to be the only appellate court precedent addressing such a situation. However, we are not bound to follow the Fourth District's decision. See *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008) ("[T]he opinion of one district, division, or panel of the appellate court is not binding on other districts, divisions, or panels. [Citation.]"). Although *Mason* presented similar facts, we disagree with its reasoning.

¶ 64 Similar to this case, the plaintiff in *Mason* asserted negligence claims under the Nursing Home Care Act, Wrongful Death Act, and Survival Act against a nursing home following the death of plaintiff's mother, a nursing home resident. *Mason*, 2022 IL App (4th) 210458, ¶¶ 4-6. The governing contract provided that " 'In the event of Resident's death, this Contract terminates automatically.' " *Id.* ¶ 4. Elsewhere, the contract contained an arbitration provision stating that " 'any action, dispute, claim, or controversy related to the quality of health care services provided pursuant to this Contract *** now existing or hereafter arising between

Resident and [nursing home] *** shall be resolved by binding arbitration.' " *Id.* ¶ 21. After defendant moved to compel arbitration, plaintiff argued, *inter alia*, that the contract was unenforceable because it terminated upon decedent's death. *Id.* ¶ 10. The trial court granted the motion to compel arbitration but stayed the Wrongful Death Act counts. *Id.* ¶ 13.

¶ 65   Upon plaintiff's appeal, one of plaintiff's arguments was that "the contract, including the arbitration clause, terminated by its own terms on decedent's death." *Id.* ¶ 43. In response, defendants relied on our supreme court's decision in *Carter*, 2012 IL 113204, to argue that "the arbitration agreement applies to plaintiff's claims brought pursuant to the Survival Act." *Mason*, 2022 IL App (4th) 210458, ¶ 43.

¶ 66   The Fourth District in *Mason* agreed with defendants that *Carter* supported enforcement of the arbitration agreement to claims that accrued before decedent's death. *Mason* explained that our supreme court in *Carter* addressed whether a plaintiff could be compelled to arbitrate a wrongful death claim pursuant to an arbitration agreement between the plaintiff's decedent and a defendant nursing home. *Id.* ¶ 44. Our supreme court explained that "[w]hile the Wrongful Death Act [citation] created a new cause of action that did not accrue until death, the Survival Act allowed the decedent's representative to maintain those statutory or common law actions that had already *accrued prior to the decedent's death*." *Id.* (Emphasis in original.) (citing *Carter*, 2012 IL 113204, ¶ 34). Thus, the *Carter* plaintiff was not obligated to arbitrate a wrongful death claim but was bound to arbitrate the Nursing Home Care Act claim brought under the Survival Act, as that claim had "already accrued to the decedent prior to death." *Id.* (citing *Carter*, 2012 IL 113204, ¶ 34).

¶ 67   The Fourth District in *Mason* extrapolated from *Carter* to conclude that the termination clause did not preclude arbitration of claims that accrued before decedent's death:

"While the facts in *Carter* do not suggest the arbitration agreement was part of another contract with a termination upon death clause like the one in this case, the supreme court's analysis is instructive. The supreme court noted a cause of action brought pursuant to the Survival Act accrued prior to the death of the decedent. *Carter*, 2012 IL 113204, ¶ 34. Thus, even with a termination upon death clause, the contract including the arbitration provision would still have been valid when the cause of action accrued. The language of the arbitration clause does not suggest it is inapplicable to claims that accrued before the resident's death but were brought after the resident's death." *Mason*, 2022 IL App (4th) 210458, ¶ 45.

*Mason* proceeded to affirm the circuit court's conclusion that plaintiff was bound to arbitrate claims other than those under the Wrongful Death Act.

¶ 68        We disagree with *Mason*'s analysis for multiple reasons. First, *Mason*'s reliance on *Carter* to assess the effect of a termination clause is questionable. As *Mason* acknowledged, nothing in *Carter* indicates that the contract in that case included a similar termination clause. *Id.* ¶ 44 ("the facts [in *Carter*] did not state whether the arbitration agreement had a provision the agreement terminated upon the decedent's death"). Although *Carter* recognized that Survival Act claims on behalf of a deceased resident could be subject to arbitration, the supreme court had no occasion to decide whether a termination upon death clause would affect the validity of an arbitration agreement.

¶ 69        More fundamentally, the *Mason* court's analysis did not attempt to discuss the intent reflected by the termination clause's plain and unequivocal language that " 'In the event of Resident's death, this Contract terminates automatically.' " *Id.* ¶ 21. Rather than discussing the meaning of that broad termination clause, the *Mason* court elected to focus on the lack of

limitation in the arbitration provision. See *id.* ¶ 45 (reasoning that "[t]he language of the arbitration clause does not suggest it is inapplicable to claims that accrued before the resident's death but were brought after the resident's death"). In this manner, the *Mason* court essentially created an exception to the termination provision, in order to allow arbitration claims that accrued before resident's death. In our view, the *Mason* court's approach did not give effect to the clear and unequivocal language of the termination provision. Thus, we decline to follow that decision.

¶ 70     In summary, we agree with plaintiff that the termination upon death provision is dispositive with respect to defendants' attempt to compel arbitration. That is, the arbitration agreement terminated with the rest of the contract upon decedent's death. As we affirm on that basis, we need not discuss whether the trial court correctly found that the arbitration provision was substantively unconscionable due to its punitive damages clause. Nor do we need to discuss plaintiff's alternative arguments, including whether the contract was otherwise substantively or procedurally unconscionable or whether Kotalik as healthcare POA lacked authority to bind decedent to the arbitration agreement.

¶ 71     Having found the arbitration provision unenforceable by operation of the termination clause, we affirm the trial court's denial of the motion to compel arbitration or mediation with respect to the counts against Oakbrook and Andora that are not based on the Wrongful Death Act (counts I, II, VI, and VIII). As defendants were not entitled to arbitration, we also affirm denial of their request to stay the Wrongful Death Act counts against Oakbrook and Andora (counts III and VII) pending arbitration.

¶ 72          E. Defendants Do Not Challenge the Order with Respect to the Counts Against Lancaster

¶ 73          Finally, we recognize that defendants' motion also sought to stay the counts against Lancaster, which consist of a Survival Act count (count IV) and a Wrongful Death Act count (count V). In the trial court, defendants asserted that Lancaster was not involved in the events underlying the complaint and that after, "appropriate discovery," Lancaster would separately "seek dismissal of Counts IV and V by way of motion practice."

¶ 74          Defendants' brief does not raise any argument challenging the trial court's order, to the extent it denied the request to stay the counts against Lancaster. Thus, defendants have forfeited any challenge to that aspect of the order. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). In any event, the record is insufficient to determine whether there is merit to Lancaster's contention that it had no involvement in the underlying events. Thus, we will not disturb the trial court's order insofar as it denied defendants' request to stay the counts against Lancaster (counts IV and V). We express no view as to whether Lancaster will ultimately be able to show that it is entitled to dismissal in subsequent proceedings.

¶ 75                              III. CONCLUSION

¶ 76          In summary, we affirm all aspects of the trial court's order. Specifically, we affirm denial of defendants' motion to dismiss and compel arbitration with respect to the Nursing Home Care Act claim against Oakbrook (count I), the Survival Act negligence counts against Oakbrook (counts II and VIII), and the Survival Act negligence claim against Andora (count VI). We also affirm the denial of defendants' request to stay the Wrongful Death Act counts against Oakbrook (count III) and Andora (count VII). Finally, we affirm the denial of defendants' motion to stay the counts against Lancaster under the Survival Act and Wrongful

Death Act (counts IV and V). We remand for further proceedings in accordance with this decision.

¶ 77          Affirmed and remanded.

---

*Clanton v. Oakbrook Healthcare Centre, Ltd.*,2022 IL App (1st) 210984

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2020-L-006460; the Hon. Patricia O. Sheahan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Carter A. Korey, Dana N. Raymond, and Chaniece M. Hill, of Korey Richardson LLP, of Chicago, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Michael W. Rathsack, Steven M. Levin, Michael F. Bonamarte IV, and Daisy Ayllon, all of Chicago, for appellee. |

---