**2023 IL 129067**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 129067)

NANCY CLANTON, as Independent Administrator of the Estate of Laurel J. Jansen, Deceased, Appellee v. OAKBROOK HEALTHCARE CENTRE, LTD., *et al.*, Appellants.

*Opinion filed September 21, 2023.*

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Cunningham, and Rochford concurred in the judgment and opinion.

Justice Holder White took no part in the decision.

## OPINION

¶ 1    Plaintiff, Nancy Clanton, as the independent administrator of the estate of the decedent, Laurel Jansen, brought an action against defendants, Oakbrook Healthcare Centre, Ltd., Lancaster, Ltd., and May Flor Andora, R.N. The complaint alleged that Jansen was negligently cared for in a nursing facility, suffered injuries

as a result, and subsequently died from her injuries. Defendants filed a motion to compel arbitration pursuant to the contract for admission to the nursing facility. The Cook County circuit court denied the motion to compel, and the First District affirmed. 2022 IL App (1st) 210984.

¶ 2 On appeal to this court, defendants contend that the denial by the trial court of their motion to compel arbitration under the nursing facility contract was erroneous. For the reasons that follow, we affirm the judgment of the appellate court affirming the denial of defendants' motion to compel arbitration.

¶ 3         BACKGROUND

¶ 4 Plaintiff's complaint alleges that Jansen was a resident at a skilled nursing facility operated by Oakbrook Healthcare, commonly known as Oak Brook Care, from July 19, 2019, through September 17, 2019. On August 9, 2019, Debbie Kotalik, as Jansen's power of attorney (POA) for healthcare, signed a "Contract Between Resident and Facility" with Oakbrook Healthcare for Jansen's admission and residency at the nursing facility.

¶ 5 Relevant to this action, the contract provides:

"E. Dispute Resolution/Punitive Damages

1. Civil Disputes Subject To This Paragraph. Resident and Facility agree that all civil claims arising in any way out of this Agreement, other than claims by Facility to collect unpaid bills for services rendered, or to involuntarily discharge Resident, shall be resolved exclusively through mandatory mediation, and, if such mediation does not resolve the dispute, through binding arbitration using the commercial mediation and arbitration rules and procedures of JAMS/Endispute in its Chicago, Illinois office.

2. Punitive/Treble Damages Waived. Resident and Facility also agree that both Resident and Facility shall seek only actual damages in any such mediation or arbitration, and that neither of them will pursue any claim for punitive damages, treble damages or any other type of damages the purpose of which are to punish one party in an amount greater than the actual damages allegedly caused by the other party.

F. Term and Termination

\*\*\*

1. If the resident is compelled by a change in physical or mental health to leave the facility, this Contract shall terminate on 7 days' notice or immediately upon the resident's death. The resident may terminate the Contract on 30 days' notice to the facility."

¶ 6      According to the complaint, Jansen suffered several falls while a resident at Oak Brook Care, resulting in injuries that contributed to or caused Jansen's death. After Jansen's death, plaintiff filed a complaint against defendants. The complaint pleads four counts against Oakbrook Healthcare. Count I alleges violations of the Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2018)). Count II alleges a common-law negligence claim, and count III alleges wrongful death. Count VIII asserts a *res ipsa loquitur* negligence claim. The complaint also alleges negligence and wrongful death claims against Lancaster (counts IV and V) and Andora (counts VI and VII). Counts I, II, IV, VI, and VIII are brought pursuant to the Survival Act (755 ILCS 5/27-6 (West 2018)), while counts III, V, and VII are brought pursuant to the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2018)).

¶ 7      Defendants filed a motion to compel mediation and/or arbitration of counts I, II, VI, and VIII pursuant to section E of the contract (hereinafter the arbitration clause), to dismiss those counts with prejudice, and to stay the remaining counts. In response, plaintiff contended that defendants had waived their right to mediate and/or arbitrate by participating in litigation for nearly a year, that the arbitration clause was procedurally and substantively unconscionable, and that Kotalik, as Jansen's POA for healthcare, lacked the authority to execute an arbitration clause on Jansen's behalf.

¶ 8      The trial court denied defendants' motion. The trial court concluded that defendants did not waive their right to enforce the arbitration clause and the arbitration clause was not procedurally unconscionable. However, the trial court held that the provision in section E(2) of the nursing facility contract was substantively unconscionable because it waived plaintiff's entitlement to punitive or treble damages, effectively limiting plaintiff's ability to recover attorney fees. The trial court declined to exercise its discretion to sever the limitation on damages

from the rest of the dispute resolution provision of section E and found that the entire dispute resolution provision was unenforceable.

¶ 9 Defendants filed an interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). Defendants argued that the trial court erred in finding the contract substantively unconscionable and, if a portion of the contract was unconscionable, the trial court erred in not severing that portion. In response, plaintiff argued that defendants waived the ability to rely on the arbitration clause in the contract and the trial court correctly concluded that the arbitration clause was substantively unconscionable. Plaintiff also argued a number of other grounds upon which the appellate court could affirm the denial of defendants' motion, including that the arbitration clause was procedurally unconscionable, Kotalik lacked authority to enter into the arbitration clause on Jansen's behalf, and the arbitration clause terminated and was ineffective upon Jansen's death pursuant to section F(1) of the contract. The last ground was not raised in the trial court.

¶ 10 The appellate court agreed with the trial court that defendants' litigation conduct did not amount to a waiver of their right to invoke the arbitration clause. 2022 IL App (1st) 210984, ¶ 51. It also concluded that it was not precluded from considering plaintiff's argument that the arbitration clause terminated upon Jansen's death since an appellee may raise an issue not presented to the trial court to sustain a judgment, as long as the factual basis for the issue was before the trial court. *Id.* ¶ 54. Interpreting the plain language of the contract, the court found that section F(1) of the contract, the termination-on-death provision, applied and that the contract, including the arbitration clause, was no longer enforceable at the time the action was commenced. *Id.* ¶ 58. It rejected defendants' argument that the entire contract did not terminate upon the death of a resident, finding that conclusion would require the court to read limitations or exceptions into the contract. *Id.* ¶ 60.

¶ 11 The appellate court rejected defendants' reliance on the Fourth District's opinion in *Mason v. St. Vincent's Home, Inc.*, 2022 IL App (4th) 210458, and recognized the conflict. 2022 IL App (1st) 210984, ¶ 63. In *Mason*, the Fourth District construed a nursing facility contract similar to the contract at issue in this case—containing both a broad arbitration clause and a termination-on-death clause. Relying on *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, the Fourth District concluded that the arbitration clause was valid, even in light of the termination-on-

death clause, on the basis that Survival Act claims accrue prior to the decedent's death, so the arbitration provision was valid when the cause of action accrued. 2022 IL App (1st) 210984, ¶¶ 66-67. The appellate court below disagreed with the reasoning of *Mason*, distinguishing *Carter* on the facts because this court in *Carter* did not have reason to construe the effect of a termination-on-death clause. *Id.* ¶ 68. More importantly, the court found that the *Mason* court's approach did not give effect to the termination clause's plain and unequivocal language and essentially created an exception to the termination clause. *Id.* ¶ 69. The court concluded that the contract terminated upon Jansen's death, at which time the arbitration clause was no longer enforceable, and affirmed the trial court's denial of the motion to compel mediation and/or arbitration of counts I, II, VI, and VIII. *Id.* ¶¶ 74-75. The court also affirmed the denial of defendants' request to stay the remaining counts. The matter was remanded for further proceedings in accordance with the appellate court's decision. *Id.* ¶ 82.

¶ 12    This court granted defendants' petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 13                                   ANALYSIS

¶ 14    Defendants argue that the negligence and Nursing Home Care Act claims are brought under the Survival Act and are assets of the decedent's estate that accrued prior to death, so they should be arbitrated under the contract's arbitration clause. Defendants contend that the termination-on-death clause in the contract does not change the result since the cause had already accrued prior to decedent's death.

¶ 15    Plaintiff argues that the entire contract did not survive decedent's death and defendants have no contract to enforce, because the parties agreed it terminated upon death. Since the termination-on-death clause was triggered before the claim was brought, arbitration as a forum under the contract was not available, and the only available forum was the court. If the nursing facility had intended to exclude the arbitration clause from the termination clause, it should have stated as much in the contract.

¶ 16    Defendants rely primarily upon our decision in *Carter*, contending that *Carter* establishes that claims brought under the Survival Act are always assets of the

- 5 -

decedent's estate that accrue prior to death and, as such, are subject to arbitration clauses in effect at the time the actions giving rise to the claims occurred. Plaintiff argues that *Carter* did not involve a termination-on-death clause and the only thing decided in *Carter* was that the contractual arbitration provision did not apply to the wrongful death claim, since that claim accrued to the beneficiaries after a resident's death. Thus, we begin our analysis by examining our opinion in *Carter*.

¶ 17                        I. *Carter v. SSC Odin Operating Co.*

¶ 18        In *Carter*, the special administrator of a decedent's estate filed a complaint against a nursing home, asserting claims of negligence and wrongful death. *Carter*, 2012 IL 113204, ¶ 4. The nursing home filed a motion to compel arbitration pursuant to arbitration agreements executed at the time of the decedent's admission to the nursing home. *Id.* Upon review of the denial of the motion to compel, this court addressed plaintiff's argument that the wrongful death claim was not subject to arbitration since plaintiff was not a party to the arbitration agreements; rather, one of the arbitration agreements was signed by the decedent, and the other was signed by the plaintiff as the decedent's legal representative. *Id.* ¶ 30. To better explain a wrongful death action, this court contrasted wrongful death actions with survival actions. *Id.* ¶ 34. While a wrongful death action is a new cause of action that does not accrue until death, "the Survival Act simply allows a representative of the decedent to maintain those statutory or common law actions that had already accrued to the decedent prior to death." *Id.* (citing *Wyness v. Armstrong World Industries, Inc.*, 131 Ill. 2d 403, 410-12 (1989)); see 755 ILCS 5/27-6 (West 2018) ("In addition to the actions which survive by the common law, the following also survive: actions of replevin, actions to recover damages for an injury to the person *** .").

> " 'A survival action allows for recovery of damages for injury sustained by the deceased up to the time of death; a wrongful death action covers the time after death and addresses the injury suffered by the next of kin due to the loss of the deceased rather than the injuries personally suffered by the deceased prior to death.' " *Carter*, 2012 IL 113204, ¶ 34 (quoting *Wyness*, 131 Ill. 2d at 410).

¶ 19        We held in *Carter* that, although the Wrongful Death Act describes a wrongful-death action as an "asset of the deceased estate" (740 ILCS 180/2.1 (West 2018)),

it is not a "true asset of the deceased's estate" that the decedent could limit via an arbitration agreement. *Carter*, 2012 IL 113204, ¶¶ 42, 46. The "asset" label in section 2.1 of the Wrongful Death Act was one of purpose: it was "intended to facilitate the filing and prosecution of a wrongful-death claim," not "to allow the deceased to control the forum and manner in which a wrongful-death claim—in which the deceased has no interest—is determined." *Id.* ¶ 44. Applying "common law principles governing all contracts," this court concluded that the plaintiff was not bound by the decedent's agreement to arbitrate the wrongful death claim. *Id.* ¶¶ 46, 60. As for the claim alleging a violation of the Nursing Home Care Act, which was brought pursuant to the Survival Act, "[the] plaintiff is bound to arbitrate that claim, which had already accrued to [the decedent] prior to death and which is brought for the benefit of [the decedent's] estate." *Id.* ¶ 57.

¶ 20        Extrapolating from this reasoning from *Carter*, defendants contend that, because the Survival Act claims accrued at a time when the contract was still in effect (prior to Jansen's death), the arbitration clause was still in effect at that point in time. Because the termination-on-death provision had not yet been triggered, the survival claims were subject to arbitration. This is the interpretation adopted by the Fourth District in *Mason*.

¶ 21        In *Mason*, the plaintiff, the decedent's son, had signed a nursing home contract for services on the decedent's behalf. *Mason*, 2022 IL App (4th) 210458, ¶ 1. After the decedent's death, the plaintiff brought suit for injuries suffered by the decedent against the nursing home defendants. The trial court stayed the claims brought pursuant to the Wrongful Death Act and compelled arbitration of the negligence and Nursing Home Care Act claims pursuant to the arbitration clause in the contract. *Id.* The Fourth District affirmed. *Id.* ¶ 2.

¶ 22        The arbitration clause in the *Mason* nursing home contract provided, in relevant part, that

        " 'any action, dispute, claim, or controversy related to the quality of health care services provided pursuant to this Contract (*e.g.*, whether in contract or in tort, statutory or common law, legal or equitable, or otherwise) now existing or hereafter arising between Resident and St. Vincent's, any past, present or future incidents, omissions, acts, errors, practices or occurrence causing injury to either party whereby the other party or its agents, employees or representatives

may be liable, in whole or in part, or any other aspect of the past, present, or future relationships between the parties shall be resolved by binding arbitration administered by an arbitrator approved by Resident and St. Vincent's.' " *Id.* ¶ 21.

¶ 23    The contract at issue in *Mason* also provided: " 'In the event of Resident's death, this Contract terminates automatically.' " *Id.* ¶ 4. In interpreting the contract, the *Mason* court concluded that, even with the termination-on-death clause, the contractual arbitration clause was valid when the cause of action accrued. *Id.* ¶ 45. The termination clause was not triggered at the time the alleged negligence occurred, since those actions occurred prior to the decedent's death. In reaching this conclusion, the *Mason* court correctly noted *Carter*'s holding that the Survival Act allowed a decedent's representative to maintain statutory or common-law actions that had accrued prior to the decedent's death. *Id.* ¶ 44 (citing *Carter*, 2012 IL 113204, ¶ 34). The *Mason* court then acknowledged that *Carter* did not involve a termination-on-death clause but concluded that such a clause would not change the result. *Id.* The *Mason* court stated that "[t]he language of the arbitration clause does not suggest it is inapplicable to claims that accrued before the resident's death but were brought after the resident's death." *Id.* ¶ 45.

¶ 24    Plaintiff contends that *Carter* is inapposite because *Carter* did not interpret a contract that contained a termination-on-death clause. *Carter* did not implicitly hold that the arbitration of claims under the Survival Act was governed by a contract that existed prior to the decedent's death even in the face of a termination-on-death clause. Plaintiff further argues that the Fourth District in *Mason* improperly expanded the holding in *Carter*. The *Mason* court's analysis was incorrect because it added language not contained in the agreement: despite the clear and unequivocal language of the termination-on-death clause that the contract "shall terminate 'immediately upon the resident's death,' " *Mason* added an exception not contained in the termination-on-death clause.

¶ 25    We agree with plaintiff that *Carter* is not definitive regarding the current issue before this court. As the appellate court below concluded, *Carter* decided whether survival and wrongful death actions were arbitrable under the agreement in that case, *i.e.*, the proper party plaintiffs for the different claims and the proper forums under the applicable contract. *Carter* did not address the application of a

termination-on-death clause. To the extent that *Mason* holds that all claims brought pursuant to the Survival Act, but brought after the decedent's death, are subject to arbitration despite a termination-on-death clause, it is overruled. Rather, the question of whether defendants have a right to arbitrate any claims under the terms of the admission contract is essentially a straightforward question of contract interpretation. Thus, we will look to the provisions of the contract, in light of our well-established rules of contract interpretation.

¶ 26                    II. Interpretation of the Contract

¶ 27        Plaintiff argues that the appellate court properly concluded that the clear and unambiguous language of the contract dictates that the termination-on-death clause terminated the entire agreement, including the arbitration provision, when Jansen died. Without an enforceable arbitration provision, defendants have no grounds to demand the arbitration forum. If defendants had intended the arbitration clause to survive the resident's death despite the termination-on-death clause, the burden was on them, as the proponents of the contract, to explicitly state that exception.

¶ 28        Defendants respond that Jansen's death terminated defendants' contractual duty to provide personal services to Jansen but that the provisions of the contract (*i.e.*, "all civil claims arising in any way out of this Agreement") make it clear that defendants did not intend to terminate the arbitration provision upon Jansen's death.

¶ 29        While public policy favors arbitration as a method of dispute resolution, an agreement to arbitrate is nevertheless a matter of contract. *United Cable Television Corp. v. Northwest Illinois Cable Corp.*, 128 Ill. 2d 301, 306 (1989). "The parties to an agreement are bound to arbitrate only those issues which by clear language and their intentions expressed in the language show they have agreed to arbitrate." *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 387 (1991). "[A]rbitration agreements cannot be extended by construction or implication." *Id.*

¶ 30        The terms of an agreement to arbitrate are determined using ordinary contract principles. *Bess v. DirecTV, Inc.*, 381 Ill. App. 3d 229, 234 (2008). As with all contracts, the primary objective is to determine and give effect to the intent of the parties at the time they entered into the contract. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011) (citing *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007)). The first

place a court looks to determine the parties' intent is the language of the contract, considering the whole contract, not just a provision in isolation. *Id.* "In the absence of an ambiguity, the intention of the parties at the time the contract was entered into must be ascertained by the language utilized in the contract itself, not by the construction placed upon it by the parties." *Lenzi v. Morkin*, 103 Ill. 2d 290, 293 (1984).

¶ 31    In this case, the order denying the motion to compel arbitration, where there was no evidentiary hearing or findings of fact, raises purely legal issues that are reviewed *de novo*. *Carter*, 2012 IL 113204, ¶ 14; *In re Marriage of Dynako*, 2021 IL 126835, ¶ 15 ("Contract interpretation is also a question of law, so our review proceeds *de novo*.").

¶ 32    Generally, a contract survives the death of a party. *In re Estate of Bajonski*, 129 Ill. App. 3d 361, 366-67 (1984). There are exceptions, however, such as when the contract requires the continued existence of a particular person or thing for its performance. *Id.* at 367; see also *People ex rel. Palmer v. Peoria Life Insurance Co.*, 376 Ill. 517, 521 (1941) ("In contracts which require the continued existence of the particular person or thing, the destruction or death of that person or thing will terminate the agreement."). Defendants contend that, although their obligation to provide personal services to Jansen under the contract terminated upon Jansen's death, the dispute resolution provision of the same contract remained enforceable after Jansen's death. Defendants contend that this is the construction of the admission contract that " 'harmonizes all the various parts so that no provision is deemed conflicting with, or repugnant to, or neutralizing of any other.' " *Zannis v. Lake Shore Radiologists, Ltd.*, 73 Ill. App. 3d 901, 906 (1979) (quoting *Coney v. Rockford Life Insurance Co.*, 67 Ill. App. 2d 395, 399 (1966)).

¶ 33    Here, the parties contracted to use arbitration as the forum. Since the contract language is unambiguous, we have no need to look to extrinsic evidence to interpret the parties' intent. See *Thompson*, 241 Ill. 2d at 441 (clear and unambiguous words in a contract are to be given their plain and ordinary meaning and a court only looks to extrinsic evidence if the contract language is ambiguous); see also *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999) (that a written agreement speaks for itself and the intent of the parties thereto is determined from the language used is known as the "four corners" rule). A contract is not rendered ambiguous

- 10 -

just because the parties disagree regarding its meaning. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). Rather, it is rendered ambiguous when the contract language "is susceptible to more than one meaning or is obscure in meaning." *Wolff v. Bethany North Suburban Group*, 2021 IL App (1st) 191858, ¶ 37.

¶ 34　　　Pursuant to the plain language of the contract, the parties contracted to use arbitration as the forum but only up until the point of the resident's death. By the express terms of the contract, once the resident died, the contract ceased to exist, including the forum provision. We find that this interpretation of the contract harmonizes and gives effect to all provisions of the contract and does not render any language superfluous. The contract in this case is unambiguous and does not contain an exception to the arbitration clause; it must be read as written. See *Thompson*, 241 Ill. 2d at 449 (a court may not alter, modify, or add new terms to a contract (citing *Gallagher v. Lenart*, 367 Ill. App. 3d 293, 301 (2006))). To the extent that *Mason* holds differently as a matter of contract interpretation, it is also overruled on this basis.

¶ 35　　　As further support for this conclusion, as plaintiff argues, defendants were the proponents of the contract. Thus, if defendants had wanted to exclude the arbitration clause from the termination-on-death clause, they were in a position to draft it that way. See, *e.g.*, *Regional Care of Jacksonville, LLC v. Henry*, 2014 Ark. 361, at 4, 444 S.W.3d 356, 358 (" 'This Arbitration provision shall remain in full force and effect notwithstanding the termination, cancellation, or natural expiration of this Admission Agreement and/or the death of Resident.' "). Or, as stated by the appellate court below:

> "the drafters of the contract could quite easily have used other language to indicate the more limited interpretation of the termination provision that defendants now seek. Rather than broadly stating that 'this Contract' (*i.e.*, the whole contract) would terminate upon the resident's death, the drafters could have specified which provisions would remain in effect. For instance, the contract could have stated that the death of a resident extinguished obligations for future performance of services, but did not extinguish the parties' agreement to arbitrate claims that accrued during a resident's lifetime. Or the termination provision could have simply included a carve-out to preserve the arbitration

provision, for example, by stating that 'this Contract, other than the arbitration agreement in Section E, shall terminate' upon the resident's death. While we cannot know why the drafters inserted such a broad termination provision, defendants cannot avoid the effect of the plain meaning of its language." (Emphasis omitted.) 2022 IL App (1st) 210984, ¶ 61.

¶ 36    Since we find that the arbitration clause is unenforceable as a matter of contract law, we do not need to address plaintiff's alternative argument that the arbitration clause is unenforceable because Kotalik was only Jansen's healthcare POA and could not bind Jansen to arbitration unless such agreement was a prerequisite to admission.

¶ 37                                                    CONCLUSION

¶ 38    In this case, applying well-established rules of contract interpretation, we conclude that the contract, including the arbitration clause, terminated upon Jansen's death. Thus, when this action was brought after Jansen's death, arbitration as a contractual forum was no longer an available option, even for alleged negligent conduct that occurred prior to Jansen's death. Accordingly, we affirm the judgment of the appellate court, which affirmed the judgment of the trial court denying defendants' motion to compel mediation and/or arbitration of counts I, II, VI, and VIII of the complaint, to dismiss those counts, and to stay counts III, IV, V, and VII of the complaint.

¶ 39    Judgments affirmed.

¶ 40    Cause remanded.

¶ 41    JUSTICE HOLDER WHITE took no part in the consideration or decision of this case.