2023 IL App (4th) 220669
NO. 4-22-0669

FILED
November 3, 2023
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THOMAS CRAIG NORD, as Independent Executor of the Estate of Naomi E. Nord, Deceased, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | Stephenson County |
| v. | ) | No. 20L45 |
| RESIDENTIAL ALTERNATIVES OF ILLINOIS, INC., an Illinois Not-for-Profit Corporation, d/b/a | ) ) | Honorable |
| Manor Court of Freeport, and DEBBIE YATES, | ) | Glenn R. Schorsch, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Harris and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1     In November 2020, Thomas Craig Nord as independent executor of Naomi E.

Nord's estate, filed a complaint against defendants, Residential Alternatives of Illinois, Inc., d/b/a

Manor Court of Freeport (Manor Court), and Debbie Yates, LPN, alleging defendants provided

negligent nursing home care to Naomi Nord which caused or contributed to her death. (For the

purposes of this appeal, we will refer to defendants simply as Manor Court.)

¶ 2     In February 2021, Manor Court filed a motion to dismiss and compel arbitration,

asserting that, when Naomi was admitted to Manor Court, Naomi and Thomas signed a nursing

home contract and arbitration agreement that required some of Thomas's claims to be submitted

to arbitration. Thomas responded that the motion should be denied because the arbitration

agreement (1) was procedurally and substantively unconscionable and (2) contravened federal

regulations containing procedural requirements for nursing homes utilizing arbitration agreements

upon the admission of a new resident. In July 2022, following a hearing, the trial court denied the motion.

¶ 3       Manor Court appeals, arguing the trial court erred by (1) failing to enforce a delegation clause in the arbitration agreement and (2) finding that the arbitration agreement was unconscionable due to its fee provisions. Thomas responds that the court's order should be affirmed because (1) Naomi's death terminated the contract, including the arbitration provision; (2) there existed no valid delegation clause; and (3) the arbitration provision is both procedurally and substantively unconscionable.

¶ 4       Because we agree with Thomas that Naomi's discharge from Manor Court, which occurred upon her death, terminated the contract, we affirm the judgment of the trial court.

¶ 5                                    I. BACKGROUND

¶ 6                                    A. The Complaint

¶ 7       In November 2020, Thomas filed a complaint against Manor Court, alleging it provided negligent care for Naomi. The complaint asserted a total of five counts against defendants under the Nursing Home Care Act (210 ILCS 45/3-714 (West 2020)), the Illinois Survival Act (755 ILCS 5/27-6 (West 2020)), and the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2020)).

¶ 8       The complaint alleged the following. On October 10, 2016, Naomi became a resident at Manor Court, a long-term care facility. Manor Court was aware that Naomi was at high risk for falls. Naomi needed assistance with daily activities such as walking, eating, and dressing. On April 24, 2017, March 1, 2018, and March 3, 2018, Naomi suffered falls. On November 26, 2018, Naomi suffered a fourth fall that resulted in fractures of two of her vertebrae. Naomi died on December 15, 2018. In February 2020, Thomas was appointed as the independent executor of

Naomi's estate. Thomas alleged Manor Court provided negligent care, which caused or contributed to Naomi's death.

¶ 9                                   B. The Motion To Dismiss

¶ 10                                   1. *Defendants' Motion*

¶ 11          In February 2021, Manor Court filed a section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2020)) motion to dismiss and compel arbitration as to the Nursing Home Care Act and Survival Act counts in the complaint. (Manor Court asked to stay the Wrongful Death Act counts pending the conclusion of arbitration.) Manor Court argued that Thomas, as Naomi's son and legal representative, entered into a valid and enforceable arbitration agreement when he signed the "Residency Agreement," pursuant to which Naomi was admitted as a resident to Manor Court. Manor Court argued that "[t]he Arbitration Agreement, contained in an addendum to the Residency Agreement[,] was executed by [Thomas] as Attorney-in-Fact for [Naomi], and expressly provided for the resolution of any potential claims."

¶ 12          In support of its motion, Manor Court submitted the affidavit of Andres Bardelas, the administrator at Manor Court. Relevant to this appeal, he averred as follows: "Naomi Nord was admitted as a resident to Manor Court on October 10, 2016. Ms. Nord remained at Manor Court until she was discharged on December 15, 2018."

¶ 13          Defendants also submitted a copy of the residency agreement. At the top right of the document was a notation indicating it was "Form # NH-363 (IL)," last revised "08/16." The document was titled "Contract" between Manor Court and Naomi. The first provision of the contract stated as follows:

> "A. Term: The term of the contract shall commence on the day the Resident
>
> enters the Facility and terminate the day the Resident is discharged, subject

however to the following provisions: (a) that if the Resident is compelled by a change in his/her physical or mental health to require placement in a hospital, the contract and all obligations under it shall terminate on seven (7) days notice; (b) that the Resident may terminate the contract and all obligations under it upon thirty (30) days written notice."

The residency agreement was signed by Thomas, as Naomi's health care power of attorney.

¶ 14        Attached to the residency agreement were two addenda: (1) an "Identified Offender and Criminal History" and (2) the "Arbitration Agreement." Both addenda were signed by Thomas. The top right of the arbitration agreement stated it was "Form NH-363B," "Revised: 04/06," and provided as follows:

> "Without limiting any rights set forth in other provisions of this AGREEMENT, any and all disputes arising hereunder shall be submitted to binding arbitration and not to a court for determination. Arbitration shall commence after written notice is given from either party to the other, such arbitration shall be accomplished expeditiously in the county and state where the property which is the subject of this AGREEMENT is located, and shall be conducted in accordance with the rules of the American Arbitration Association ('AAA'). The arbitration shall be conducted by three (3) arbitrators, one of whom shall be appointed by FACILITY and one whom shall be appointed by RESIDENT. The third arbitrator shall be appointed by the first two arbitrators. The arbitrator shall be selected from a list of arbitrators submitted by the AAA. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Arbitration shall not commence until the party requesting it has deposited one thousand five hundred

- 4 -

and No/100 U.S. dollars ($1,500.00) with the arbitrators as a retainer for the arbitrators' fees and costs. The party requesting arbitration shall advance such sums as are required from time to time by the arbitrators to pay the arbitrators' fees and costs, until the prevailing party is determined or the parties have agreed in writing to an alternate allocation of fees and costs. Each party shall pay its own legal fees and costs and any other fees incurred in connection with an arbitration proceeding which arises out of or relates in any way to this AGREEMENT; provided, however, that the arbitration panel shall award the arbitrators' fees and costs to the prevailing party in its arbitration judgment.

Notwithstanding the parties intent to submit any controversy or claim arising out of or relating to this AGREEMENT or any other document signed or initialed in connection with this AGREEMENT to arbitration, in the event that a court of competent jurisdiction shall determine or a relevant law shall provide that a particular dispute is not subject to the arbitration provisions of this Section, then the parties agree to the following provisions:

a. Each party believes that justice will be served if issues regarding this AGREEMENT are heard by a judge in a court proceeding, and not a jury, and each party hereby waives their right to a trial by jury. Each party agrees that any claim, demand, action or cause or action, with respect to any action, proceeding, claim, counterclaim, or cross-claim, whether in contract or in tort (regardless if the tort action is presently recognized or not), based on, arising out of, in connection with, or in any way related to this AGREEMENT, the documents (including, without limitation, any declaration), any course of conduct, course of dealing, verbal or

written statement, validation, protection, enforcement action or omission of any party shall be heard by a judge in a court proceeding and not a jury.

b. The party prevailing in such dispute shall be entitled to recover all costs incurred, including reasonable attorney's fees and costs, whether incurred before trial, at trial, in bankruptcy proceedings, or on appeal."

¶ 15　　　　In a memorandum in support of the motion to dismiss and compel arbitration, Manor Court argued that "[Thomas] signed a Residency Agreement regarding [Naomi's] admission and care at Manor Court" and "concurrently executed the voluntary arbitration addendum that expressly provided for the resolution of any [*sic*] 'any and all disputes.' " Manor Court argued that (1) Thomas's claims were within the scope of the arbitration agreement, (2) the arbitration agreement was valid and enforceable, and (3) the United States Arbitration Act (9 U.S.C. § 2 (2018)) required enforcement of the arbitration agreement. Manor Court also asserted that the arbitration agreement contained a clause that "delegated all questions of arbitrability solely to the arbitrator."

¶ 16　　　　　　　　　　2. *The First Amended Complaint*

¶ 17　　　　In August 2021, the trial court entered a written order allowing Thomas to file a first amended complaint. The first amended complaint differed from the original complaint only regarding amendments to the "Health Professional's Report" attached to the affidavit of Thomas's attorneys, which attested that there was reasonable and meritorious cause for the filing of the complaint. The court noted in its order that the motion to dismiss and compel arbitration would stand as Manor Court's responsive pleading to the first amended complaint.

¶ 18　　　　　　　　　　3. *Thomas's Response*

¶ 19　　　　The parties engaged in discovery related to the arbitration agreement. In December

2021, Thomas filed a response to Manor Court's motion to dismiss in which he argued that the arbitration agreement was procedurally and substantively unconscionable. Specifically, Thomas asserted the agreement was procedurally unconscionable because Thomas (1) did not have equal bargaining power, (2) could not have been fully informed about the contents of the documents he was signing, and (3) did not participate in the agreement's drafting. Thomas claimed the agreement was substantively unconscionable because its terms benefitted only Manor Court and deprived Thomas and Naomi of (1) the statutory right to recover attorney fees and costs under the Nursing Home Care Act, (2) the right to a jury trial, and (3) the right to appeal. Thomas also argued the agreement was substantively unconscionable for the following reasons:

"[The agreement] (1) requires the party requesting arbitration to pay $1,500 to commence arbitration; (2) the party requesting arbitration has to advance such sums as are required from time to time to pay the arbitrators' fees and costs; (3) the winning party is entitled to recover the arbitrator's fees and costs; (4) the resident has to choose one of three arbitrators from a pre-approved list; and [(5)] if a court shall determine or a relevant law provide the dispute is not subject to arbitration, then the Agreement calls for a bench trial with similarly unconscionable terms, including awarding fees and costs to the prevailing party."

¶ 20         4. *The Trial Court's Ruling*

¶ 21   In April 2022, the trial court heard oral arguments on Manor Court's motion to compel arbitration, and in June 2022, it issued an oral ruling denying the motion. The court found that "included within the contract documents as an addendum to the residency agreement was an arbitration agreement." The court noted that "there were 27 pages of documents that were included in the admission documents and in the middle of those documents was the arbitration agreements."

¶ 22    The trial court found that the agreement to arbitrate was unconscionable because it imposed all the costs of arbitration, which could reach into the thousands of dollars, upon the resident.

¶ 23    Manor Court appeals pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). See *Hartz v. Brehm Preparatory School, Inc.*, 2021 IL App (5th) 190327, ¶ 21, 183 N.E.3d 172 ("[A]n order granting or denying a motion to compel arbitration is injunctive in nature and an appealable interlocutory order under Rule 307(a)(1).").

¶ 24                                    II. ANALYSIS

¶ 25    Manor Court appeals, arguing the trial court erred by (1) failing to enforce a delegation clause in the arbitration agreement and (2) finding that the arbitration agreement was unconscionable due to its fee provisions. Thomas responds that the court's order should be affirmed because (1) Naomi's death terminated the contract, including the arbitration provision; (2) there existed no valid delegation clause; and (3) the arbitration provision is both procedurally and substantively unconscionable.

¶ 26    Because we agree with Thomas that Naomi's discharge from Manor Court, which occurred upon her death, terminated the contract, we affirm the judgment of the trial court.

¶ 27                            A. The Standard of Review

¶ 28    "A motion to compel arbitration is essentially a section 2-619(a)(9) motion to dismiss or stay an action in the trial court based on an affirmative matter, the exclusive remedy of arbitration." *Sturgill v. Santander Consumer USA, Inc.*, 2016 IL App (5th) 140380, ¶ 21, 48 N.E.3d 759. Section 2-619(a)(9) of the Code of Civil Procedure permits the dismissal of a claim that is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2020). In ruling on a motion to dismiss and compel arbitration pursuant to

section 2-619, the court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 141, 847 N.E.2d 99, 103 (2006).

¶ 29    "In an appeal from the denial of a motion to compel arbitration without an evidentiary hearing, our review is *de novo*." (Internal quotation marks omitted.) *Clanton v. Oakbrook Healthcare Centre, Ltd.*, 2022 IL App (1st) 210984, ¶ 41, 207 N.E.3d 1139 (*Clanton I*); see also *Fiala v. Bickford Senior Living Group, LLC*, 2015 IL App (2d) 141160, ¶ 17, 32 N.E.3d 80 ("We review *de novo* the trial court's decision on a motion to dismiss pursuant to section 2-619. [Citation.] Likewise, the scope of [an] arbitration provision presents a question of contract interpretation, and this is also reviewed *de novo*.").

¶ 30                              B. The Applicable Law

¶ 31    In construing a contract, the primary objective is to give effect to the intention of the parties. *Gallagher v. Lenart*, 226 Ill. 2d 208, 232, 948 N.E.2d 39 (2007). "A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Id.* at 233. "If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning." *Thompson v. Gordon*, 241 Ill. 2d 428, 441, 948 N.E.2d 39, 47 (2011). "A contract must be construed as a whole, viewing each provision in light of the other provisions." *Id.* "The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself." *Gallagher*, 226 Ill. 2d at 233.

¶ 32                              C. This Case

¶ 33    Thomas argues that Naomi's death terminated the entire contract, including the arbitration agreement. In support, Thomas points to the first sentence of the contract, titled "Term,"

which states that the contract terminates "the day the Resident is discharged." (The parties do not dispute that Naomi was discharged from Manor Court upon her death on December 15, 2018.) Thomas contends that the arbitration agreement is a provision of the larger contract, which, by its plain language, terminated the day Naomi died. As a result, Thomas asserts, all obligations under the contract, including the agreement to arbitrate, ended on December 15, 2018.

¶ 34        Thomas acknowledges that this court recently rejected a similar argument in *Mason v. St. Vincent's Home, Inc.*, 2022 IL App (4th) 210458, ¶ 45, 199 N.E.3d 346, holding instead that, despite the existence of a "termination upon death" clause, the arbitration provision was still applicable to claims that accrued before the decedent's death. Thomas directs this court's attention, however, to *Clanton I*, 2022 IL App (1st) 210984, ¶ 62, in which the First District held that a "termination upon death" clause terminated the entire contract, including the arbitration provision. Naturally, Thomas asks this court to adopt the reasoning of the *Clanton I* court and Manor Court asks this court to follow *Mason*.

¶ 35        Manor Court also argues that the arbitration agreement is not a provision within the contract containing the termination clause but is instead a separate addendum that does not contain a termination provision. That is to say, Manor Court urges this court to hold that the termination provision of the residency agreement has no effect on the arbitration provision.

¶ 36        We note that in January 2023—just six days before oral argument was conducted in this case—the supreme court granted defendants' petition for leave to appeal in *Clanton I* (*Clanton v. Oakbrook Healthcare Centre Ltd.*, No. 129067 (Ill. Jan. 25, 2023)). Accordingly, this court *sua sponte* entered an order holding our decision in this case in abeyance pending the decision of the supreme court.

¶ 37        Because the supreme court has now (1) affirmed the First District's holding and

- 10 -

reasoning in *Clanton I* and (2) overruled *Mason* (*Clanton v. Oakbrook Healthcare Centre, Ltd.*, 2023 IL 129067, ¶¶ 2, 34 (*Clanton II*)), we hold that, by operation of the plain language of the residency agreement, the contract between the parties, including the arbitration provision, terminated upon Naomi's death and discharge from Manor Court.

¶ 38                                                    1. Clanton

¶ 39          In *Clanton I*, the plaintiff, as power of attorney for her elderly mother, executed a contract with the defendant nursing facility. *Clanton I*, 2022 IL App (1st) 210984, ¶ 1. After her mother's death, plaintiff filed a negligence lawsuit against the facility alleging counts under the Nursing Home Care Act, Survival Act, and Wrongful Death Act. *Id.* The defendant filed a motion to compel arbitration of the Nursing Home Care Act and Survival Act counts based upon the arbitration provision in the contract. *Id.* The trial court denied the defendant's motion, finding the arbitration provision was substantively unconscionable. *Id.* The appellate court affirmed the trial court's denial of the defendant's motion to compel arbitration, albeit on different grounds, concluding that "the agreement was no longer enforceable, given the contract's explicit language that it terminated upon decedent's death." *Id.* ¶ 3.

¶ 40          Section E of the contract at issue in *Clanton I* was titled " 'Dispute Resolution/Punitive Damages' " and stated that " 'all civil claims arising in any way out of this Agreement *** shall be resolved exclusively through mandatory mediation, and, if such mediation does not resolve the dispute, through binding arbitration.' " *Id.* ¶ 13. Section F of the contract "set[ ] forth circumstances that terminate[d] the contract" and provided that " 'this Contract shall terminate on 7 days' notice or immediately upon the resident's death.' " *Id.*

¶ 41          On appeal, the defendant argued that (1) there was " 'no intention for the entire contract to terminate' upon a resident's death" and (2) a harmonious reading of the termination

and arbitration provisions was that, upon the resident's death, the facility " 'no longer ha[d] to provide services to [decedent], however, lawsuits arising from the care [decedent] received' " were still subject to arbitration. *Id.* ¶ 56. (Manor Court asserts similar arguments in the present appeal.)

¶ 42    The *Clanton I* court disagreed, emphasizing that the language of the termination clause was clear and unambiguous. *Id.* ¶ 58. As a result, the court was obligated to apply the provision's plain meaning. *Id.* Noting that " '[t]he best indication of the parties' intent is found in the plain and ordinary meaning of the language of the contract' " (*id.* ¶ 59 (citing *St. Paul Mercury Insurance v. Aargus Security Systems, Inc.*, 2013 IL App (1st) 120784, ¶ 59, 2 N.E.3d 458)), the First District concluded that the statement " 'This Contract' terminates upon a resident's death" "indicates that the resident's death applies to terminate all contractual provisions." *Id.*

¶ 43    The court further explained its decision by writing as follows:

> "By urging that we should not read the termination provision so broadly, defendants essentially ask us to assume or read into the agreement limitations or exceptions that are simply not present. However, '[w]e will not "alter, change, or modify existing terms of a contract, or add new terms or conditions to which the parties do not appear to have assented." ' [*St. Paul Mercury Insurance*, 2013 IL App (1st) 120784, ¶ 59 (quoting *Thompson*, 241 Ill. 2d at 449).]

> Moreover, ' "there is a presumption against provisions that easily could have been included in a contract but were not." ' *Id.* (quoting *Thompson*, 241 Ill. 2d at 449). Here, the drafters of the contract could quite easily have used other language to indicate the more limited interpretation of the termination provision that defendants now seek. Rather than broadly stating that 'this Contract' (*i.e.*, the whole contract) would terminate upon the resident's death, the drafters could have

specified which provisions would remain in effect. For instance, the contract could have stated that the death of a resident extinguished obligations for future performance of services, but did not extinguish the parties' agreement to arbitrate claims that accrued during a resident's lifetime. Or the termination provision could have simply included a carve-out to preserve the arbitration provision, for example, by stating that 'this Contract, *other than the arbitration agreement in Section E*, shall terminate' upon the resident's death." (Emphasis in original.) *Id.* ¶¶ 60-61.

¶ 44 Addressing the defendant's argument that the appellate court should attempt to harmonize the provisions to avoid rendering one of the provisions meaningless, the First District wrote the following:

"We are not neutralizing the arbitration provision, which remains in effect prior to termination. That is, our construction gives effect to both the arbitration and termination provisions. Read together, the provisions indicate that, while the parties may be obligated to arbitrate claims during a resident's lifetime, the arbitration agreement (like every other part of the contract) terminates upon the resident's death. Our application of the broad termination provision does not conflict with the arbitration provision, any more than a termination provision affects every other provision in the agreement. We are simply giving effect to the contract's unequivocal language that all of its provisions terminate upon the resident's death." *Id.* ¶ 62.

¶ 45 The supreme court agreed with the First District's analysis, concluding that the plain language of the contract unambiguously stated that the parties contracted to use arbitration as the forum, but only up until the point of the resident's death. *Clanton II*, 2023 IL 129067, ¶ 34.

The court wrote, "By the express terms of the contract, once the resident died, the contract ceased to exist, including the forum provision." *Id.* Accordingly, because the "action was brought after [the resident's] death, arbitration as a contractual forum was no longer an available option, even for alleged negligent conduct that occurred prior to [the resident's] death," and the appellate court correctly denied the defendant's motion to compel arbitration. *Id.* ¶ 38.

¶ 46                                    2. *This Case*

¶ 47        We conclude that the reasoning of *Clanton I*, agreed with by the supreme court in *Clanton II*, is equally applicable to the facts and arguments in the present case. The first provision in the contract between the parties clearly states, "The term of the contract shall commence on the day the Resident enters the Facility and terminate the day the Resident is discharged." The arbitration provision, executed at the same time, states, "[A]ny and all disputes arising hereunder shall be submitted to binding arbitration." Manor Court argues that the arbitration provision is a separate agreement because it is an addendum to the contract. However, as the Illinois Supreme Court has observed, it is a "long-standing principle that instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are regarded as *one contract* and will be construed together." (Emphasis added.) *Gallagher*, 226 Ill. 2d at 233.

¶ 48        Construing the provisions as one contract, the plain language of the contract clearly states that contractual obligations terminate upon discharge, which in this case, the parties agree, occurred on December 15, 2018. Giving effect to the plain, unambiguous language of the termination provision of the contract, as we must, we conclude the contract, including the entire arbitration provision, terminated upon Naomi's discharge, following her death, on December 15, 2018. Put another way, after December 15, 2018, no contract, agreement to arbitrate, or delegation provision existed between the parties. The arbitration provision contains no language stating that

it survives the termination of the contract. To conclude that the arbitration provision survives the termination provision would require this court to read language into the arbitration provision that the parties did not include. We also note that "the party who drafted the provision," in this case Manor Court, "is saddled with the consequences of the provision *as drafted*." (Emphasis in original and internal quotation marks omitted.) See *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 14, 857 N.E.2d 250, 259 (2006).

¶ 49        We acknowledge that Illinois law favors arbitration as a means of settling disputes. *Salsitz v. Kreiss*, 198 Ill. 2d 1, 13, 761 N.E.2d 724, 731 (2001). However, "an agreement to arbitrate is a matter of contract." *Id.* And "[w]hether the parties have agreed to arbitrate is determined under ordinary state law contract principles." (Internal quotation marks omitted.) *Melena*, 219 Ill. 2d at 149. We decline to elevate arbitration provisions above other contract provisions in the absence of specific contractual language to that effect. See *Grundstad v. Ritt*, 106 F.3d 201, 205 n.5 (7th Cir. 1997) ("[T]he federal policy favoring arbitration applies to issues concerning the scope of an arbitration agreement entered into consensually by contracting parties; it does not serve to extend the reach of an arbitration provision to parties who never agreed to arbitrate in the first place.")." (Emphasis omitted)). Nor will we apply the policy favoring arbitration to excuse poor drafting. If the parties to a contract intend for an arbitration provision to survive a contract termination provision, they have the ability and responsibility to make that intent clear in the contract. See also *Clanton II*, 2023 IL 129067, ¶ 35 ("[D]efendants were the proponents of the contract. Thus, if [they] had wanted to exclude the arbitration clause from the termination-on-death clause, they were in a position to draft it that way.").

¶ 50        Manor Court cites *Litton Financial Printing Division v. National Labor Relations Board*, 501 U.S. 190, 207 (1991), for the proposition that "structural provisions relating to

remedies and dispute resolution—for example, an arbitration provision—may in some cases survive in order to enforce duties arising under the contract." *Litton* is distinguishable from the present case because it arises in the context of a labor dispute over a collective bargaining agreement and involves the application of the National Labor Relations Act and federal common law of collective bargaining. We decline to apply to the case before us principles from the discrete body of federal labor law, which contemplates successive contracts between unions and employers that are negotiated over months, if not years, by teams of sophisticated lawyers.

¶ 51       The present dispute does not involve unions, employers, successive contracts, or federal labor law. Instead, it involves only a single contract for services between an individual and a business entity and requires only the straightforward application of well-established state law contract interpretation principles, which we have earlier explained.

¶ 52       Manor Court also cites *Aspero v. Shearson American Express, Inc.*, 768 F.2d 106, 108 (6th Cir. 1985), for the same proposition, that "the duty to arbitrate does not necessarily end when the contract is terminated." *Aspero* is likewise distinguishable. The issue in *Aspero* was whether an employee who was terminated from employment by her brokerage firm was required to arbitrate disputes arising out of her employment. *Id.* at 107. The resolution of *Aspero* turned on an "interpretation of New York Stock Exchange Rule 347, which provides for settlement by arbitration of [a]ny controversy *** arising out of the employment or termination of employment of a registered broker." (Internal quotation marks omitted.) *Id.* Notably, the *Aspero* court cited a collective bargaining case, *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964), as authority for the proposition that an agreement to arbitrate may survive a contract. For the reasons previously stated, we find such authority to be inapplicable to the present controversy. Moreover, *Aspero* did not involve a determination of the effect of an express termination clause on an arbitration clause

in a contract for services, as does the present case.

¶ 53 Whether a contract provides for mandatory arbitration must be determined on a case-by-case basis. *Kinkel*, 223 Ill. 2d at 42. Having applied long-standing principles of contract interpretation to the precise question and facts presented by this case, as well as the recent decision of the supreme court in *Clanton II*, we conclude that, by its express terms, the entire contract between the parties, including the arbitration provision, terminated on December 15, 2018, the day Naomi died and was discharged from Manor Court. Because Thomas filed his claims after his contractual obligation to arbitrate had ended, we affirm the judgment of the trial court denying Manor Court's motion to compel arbitration.

¶ 54                                    III. CONCLUSION

¶ 55 For the reasons stated, we affirm the judgment of the trial court.

¶ 56 Affirmed.

*Nord v. Residential Alternatives of Illinois, Inc.*, 2023 IL App (4th) 220669

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Stephenson County, No. 20-L-45; the Hon. Glenn R. Schorsch, Judge, presiding. |

| | |
|---|---|
| **Attorneys** **for** **Appellant:** | Donna J. Fudge, of Fudge Broadwater, P.A., of St. Petersburg, Florida, for appellants. |

| | |
|---|---|
| **Attorneys** **for** **Appellee:** | Amanda J. Hamilton, of Konicek & Dillon, P.C., of Geneva, and Lauren E. Park, of Levin & Perconti, of Chicago, for appellee. |