NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 241428-U

NO. 4-24-1428

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 28, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.L., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
| Petitioner-Appellee, | ) | No. 23JA3 |
| v. | ) | |
| Dylan L., | ) | Honorable |
| Respondent-Appellant). | ) | Timothy J. Cusack, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Zenoff and Knecht concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's determination respondent was an unfit parent was not against the manifest weight of the evidence.

¶ 2   In May 2024, the State filed a petition to terminate the parental rights of respondent, Dylan L., to his minor child, A.L. (born December 2022). Following the fitness and best interest hearings, the trial court granted the State's petition and terminated respondent's parental rights. The court also terminated the parental rights of A.L.'s mother, Shawna W., who is not a party to this appeal. On appeal, respondent argues the court's determination he was an unfit parent was against the manifest weight of the evidence. We affirm.

¶ 3                          I. BACKGROUND

¶ 4   On January 3, 2023, the State filed a petition for adjudication of wardship, alleging A.L. was a neglected minor pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987

(Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)). The petition alleged, *inter alia*, Shawna W. failed to seek prenatal care while pregnant with A.L.; Shawna W. had a history of substance abuse; and both respondent and Shawna had previously been found unfit in cases involving other children and there had been no subsequent findings of fitness. The trial court entered a temporary custody order on January 4, which stated, "Parents given a copy of the petition and admonishments in open court. *** Parents do not object to shelter care." In that same order, the court found there was probable cause for the State's petition and granted temporary custody and guardianship of A.L. to the Illinois Department of Children and Family Services (DCFS).

¶ 5        Prior to the adjudicatory hearing, respondent filed a written answer, stipulating "the State can produce evidence for the allegations" in the adjudicatory petition. On March 9, 2023, the trial court accepted respondent's stipulation and found A.L. was a neglected minor as alleged in the State's petition. That same day, the court entered a dispositional order, stating respondent was "unfit to care for, protect, train, educate, supervise or discipline [A.L.] and placement with him is contrary to the health, safety and best interests of the minor." The court ordered custody and guardianship of A.L. would remain with DCFS.

¶ 6        In May 2024, the State filed a petition to terminate respondent's and Shawna W.'s parental rights to A.L. Count II of the petition, which related to respondent, alleged:

"[Respondent], father of the minor, is an unfit person *** for failure to make reasonable progress toward the return of the minor to his care within nine (9) months after the adjudication of Neglect under Section 2-3 of the [Juvenile Court Act], as amended (time period being August 2, 2023 through May 2, 2024)."

The trial court held a hearing on the State's petition on October 17, 2024. Because respondent's arguments relate solely to the court's finding of parental unfitness, we discuss only those facts

necessary to understand his contentions on appeal.

¶ 7                                    A. Fitness Hearing

¶ 8                                1. *Testimony of Johnna Kinney*

¶ 9        Johnna Kinney, a caseworker for Lutheran Social Services of Illinois, was the assigned caseworker for A.L.'s case from August 2023 to May 2024. In order to have A.L. returned to his care, respondent needed to complete the following services: mental health treatment, individual counseling, domestic violence counseling, substance abuse treatment, parenting classes, and drug testing twice a month.

¶ 10        According to Kinney, respondent never completed substance abuse treatment, despite his statements to the contrary. Respondent indicated to Kinney he completed substance abuse treatment at Gateway; however, records received from Gateway did not indicate respondent completed any treatment.

¶ 11        Kinney acknowledged respondent successfully complied with mental health treatment and individual counseling and completed parenting classes. However, Kinney had hesitations about respondent's completion of individual counseling because all she received from his counselor was "a one paragraph completion *** . However, there was no detail indicating that [respondent] had worked through the reasons that the DCFS case had opened."

¶ 12        Respondent was referred to domestic violence counseling and completed an assessment in February 2024; however, the evaluator indicated anger management counseling would be a better fit for respondent. Based on this recommendation, Kinney referred respondent to anger management counseling in late February 2024. Respondent completed an intake but failed to attend the first two classes and did not respond to any further communications from the provider.

¶ 13        Between August 2023 and May 2024, respondent was asked to complete 28 drug

drops. Out of those 28 drops, respondent only completed 13. All 13 of the drops respondent completed were positive for tetrahydrocannabinol (THC). Kinney had concerns about respondent testing positive for THC because he had previously been diagnosed with cannabis use disorder. Respondent also tested positive for cocaine in September 2023, positive for "spice" on April 5, 2024, and positive for cocaine and spice on April 24, 2024. As a result of these positive drops, the agency decreased respondent's visitation with A.L. in April 2024.

¶ 14 During two child and family team meetings, respondent displayed inappropriate and "rageful" behavior. During the first incident, respondent "was yelling and cussing at [Shawna W.]" in front of multiple staff members. Respondent only calmed down after Shawna "removed herself from the situation." During the second incident, respondent became enraged at staff and started "yelling with a lobby full of other clients."

¶ 15 On cross-examination by respondent's counsel, Kinney acknowledged respondent was consistently employed throughout her time as the caseworker. When asked about whether she had good interactions with respondent, Kinney stated she "had several conversations with positive interaction" during her time as the caseworker. Respondent resided with his mother for a majority of the relevant time period and was approved to have visits at his mother's residence. However, there was a period from September 2023 to December 2023 when respondent lived with Shawna W. During the time respondent lived with Shawna, he had limited contact with the agency. In November 2023, respondent told Kinney he wanted to "get on track and get [A.L.] back into his care." After this statement, respondent made some progress but did not complete all his services. Respondent attended 10 drops between November 2023 and May 2024. However, all were positive for THC, and respondent tested positive for cocaine and spice in April 2024. Kinney acknowledged respondent had a medical cannabis card. When asked about respondent's substance abuse

assessment, Kinney testified respondent completed a substance abuse assessment in 2022, which did not recommend treatment; however, respondent failed to complete a new assessment, despite being required to do so. Kinney acknowledged respondent successfully completed counseling, but she recommended he resume individual counseling due to mental health concerns.

¶ 16 On cross-examination by the guardian *ad litem* (GAL), Kinney stated respondent only attended 14 out of 33 visits with A.L. during the relevant nine-month period. Kinney also testified respondent's positive drops were a barrier to returning A.L. to his care. According to Kinney, despite successfully completing a parenting class and individual counseling, she did not believe respondent was implementing what he learned in his daily life.

¶ 17 2. *Testimony of Alexis Jones*

¶ 18 Alexis Jones, a former probation officer for the Tazewell County probation department, was respondent's probation officer. Respondent was on probation for a firearm offense. As part of respondent's probation, he was ordered to attend Moral Reconation Therapy (MRT). Respondent told Jones he did not think he needed to attend and missed multiple sessions during her time as his probation officer. In September 2023, respondent indicated to Jones he was living with Shawna W. The next month, respondent told Jones he failed a drug test for DCFS because Shawna "drugged him." Jones admonished respondent that Shawna was not a good influence. Respondent agreed and stated he knew she was holding him back from getting custody of A.L.

¶ 19 On cross-examination by respondent's counsel, Jones stated respondent completed a substance abuse evaluation as part of his probation, but she did not recall if the evaluation recommended any treatment. However, based on her own personal observations, she did not believe respondent needed substance abuse treatment. As part of his probation, respondent

successfully completed mental health treatment in October 2023.

¶ 20        On cross-examination by the GAL, Jones testified respondent completed four drops for probation between August 2023 and May 2024. Respondent tested positive for THC in October 2023, but the other three drops were negative. However, Jones admitted the other three drops did not test for THC.

¶ 21        On redirect examination by the State, Jones acknowledged only two of those four drops tested for substances other than alcohol.

¶ 22                    3. *Testimony of Respondent*

¶ 23        Respondent acknowledged he lived with Shawna W. off and on between August 2023 and May 2024. During that time, he and Shawna were in an on again, off again relationship. In November 2023, respondent started "work[ing] really hard" toward getting A.L. back. Respondent admitted he used spice but denied ever using cocaine. When asked about his behavior at the two child and family team meetings, respondent acknowledged his angry outbursts and stated he was "just upset" and regretted his behavior.

¶ 24        On cross-examination by the State, respondent acknowledged he was on probation for possession of a firearm without a firearm owners identification card and reckless conduct. When asked about testing positive for spice on two occasions, respondent testified, "[O]ne time I think I did it unwillingly." Respondent admitted it was wrong to use spice while attempting to regain custody of A.L. but stated he would never do it again. When asked about his positive drop for cocaine, respondent emphatically denied ever using cocaine and claimed Shawna drugged him. Respondent acknowledged he had some rageful behaviors and did not attend MRT during the relevant time period but stated he later began attending MRT and recently successfully completed the program.

¶ 25    4. *Trial Court's Ruling*

¶ 26    Following arguments from the parties, the trial court found the State had proved by clear and convincing evidence respondent was an unfit parent as alleged in its petition to terminate parental rights. The evidence demonstrated respondent made "some positive steps" by completing parenting classes and individual counseling; however, respondent did not complete any other services. The court also highlighted respondent's failure to attend over half his scheduled visits with A.L. Based on respondent's multiple positive drops, some as recently as April 2024, the court concluded respondent had a substance abuse problem which prevented A.L. from being returned to him.

¶ 27    B. Best Interest Hearing

¶ 28    Immediately following its oral ruling on parental fitness, the trial court proceeded to a best interest hearing. The State presented testimony from Kinney and A.L.'s foster parent. After this testimony, the court found by a preponderance of the evidence it was in A.L.'s best interest for respondent's parental rights to be terminated. The court then entered a written order terminating respondent's parental rights.

¶ 29    This appeal followed.

¶ 30    II. ANALYSIS

¶ 31    On appeal, respondent argues the trial court's finding he was an unfit parent was against the manifest weight of the evidence.

¶ 32    Under the Juvenile Court Act, there is a two-stage process for the involuntary termination of parental rights. 705 ILCS 405/2-29(2) (West 2022). The first stage, commonly referred to as a fitness hearing, "focus[es] *** on the parent's conduct relative to the ground or grounds of unfitness alleged by the State." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). The burden is

on the State to "demonstrate by clear and convincing evidence that the parent is 'unfit' under one or more of the grounds set forth in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2004))." *In re Veronica J.*, 371 Ill. App. 3d 822, 828 (2007). On review, this court affords great deference to the trial court's finding of parental unfitness and will not disturb that finding unless it is against the manifest weight of the evidence. *In re H.D.*, 343 Ill. App. 3d 483, 493 (2003). "A decision is against the manifest weight of the evidence when the opposite conclusion is clearly apparent." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 48.

¶ 33        In this case, the trial court found respondent was an unfit parent because he failed to make reasonable progress toward the return of A.L. to his care during the relevant nine-month period. This court has determined "[r]easonable progress exists when the trial court can conclude that, *in the near future*, it will be able to order the children returned to parental custody." (Emphasis added.) *In re Dar. H.*, 2023 IL App (4th) 230509, ¶ 53. On appeal, respondent attempts to oversimplify the rationale of the trial court and argues his two positive drug tests were the sole reason the court found he failed to make reasonable progress. Respondent claims "[t]he two non-THC positive drops should not negate the demonstrable progress Respondent has made in other areas." We disagree with respondent that the "two non-THC positive drops" are the sole reason the court found he was an unfit parent. While respondent did complete some of the required services, as noted by the court in its ruling, respondent also failed to complete multiple other services during the relevant nine-month period. Of particular significance is that respondent, despite being ordered to complete a substance abuse evaluation, not only failed to complete the evaluation, but he also lied to his caseworker about completing the evaluation. Kinney testified she obtained records from Gateway, where respondent informed her that he completed substance abuse treatment, and the records did not indicate respondent completed any treatment at their

facility. In addition, respondent tested positive for illegal substances on multiple occasions, even after respondent claimed he was "work[ing] really hard" to get A.L. back. During the relevant time period, respondent only completed 13 of the 28 requested drops, and 2 of those were positive for cocaine. Based on these positive drops, the agency reduced respondent's visitation with A.L., which demonstrates respondent was moving farther from reunification, not closer. Respondent also failed to consistently attend visitation with A.L. and only attended 14 of the 33 scheduled visits during the relevant time period. Moreover, although respondent successfully completed some of the required services, Kinney did not believe respondent was implementing what he learned in his daily life. This does not demonstrate reasonable progress. As this court has previously held:

> "[T]here [is] a significant difference between going through the motions, checking off the boxes, and mechanically doing what is asked of the parent and actually changing the circumstances that brought the children into care. The point of requiring parents to attend classes and engage in services is not just so the parents can say they attended; it is so parents *apply* what they learn in their lives, in the real world, such that the court can be confident that the children will be safe in their care." (Emphasis in original.) *Ta. T.*, 2021 IL App (4th) 200658, ¶ 56.

Simply because respondent completed some of his required services does not mean he made reasonable progress. It is clear from Kinney's testimony respondent failed to implement what he learned and make meaningful changes in his life so that A.L. would be able to be returned to his care. Additionally, respondent failed to address his substance abuse issues through treatment, failed to comply with the majority of the drops requested by the agency, and continued to utilize illegal substances. This does not demonstrate reasonable progress. For those reasons, the court's

finding respondent was an unfit parent for failing to make reasonable progress toward the return of A.L. during the relevant nine-month period was not against the manifest weight of the evidence.

¶ 34                                  III. CONCLUSION

¶ 35            For the reasons stated, we affirm the trial court's judgment.

¶ 36            Affirmed.